IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMOS SHARPE, et al.,

   *Plaintiffs*

v.

DISTRICT OF COLUMBIA, et al.,

   *Defendants.*

No.  1:11-cv-01812 BJR

ORDER GRANTING DEFENDANT CLINGERMAN'S MOTION TO DISMISS

**I. INTRODUCTION**

This matter comes before the court on Defendant John Clingerman's Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 2.). Upon consideration of the motion, the opposition and reply thereto, the entire record, and the applicable law, the court will grant the motion. The court's reasoning is set forth below.

**II. PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiffs, Amos and Monica Sharpe, reside at 97 Glavenston Street SW apartment #302, an apartment building located in Washington, D.C. (*See* Superior Court of the District of Columbia Search Warrant, attached as Ex. 1 to Dkt. No. 2.). On August 10, 2010, at

ORDER-1

approximately 7:00 in the morning, members of the Metropolitan Police Department, including Defendant Detective Clingerman, "burst" through the door of the Sharpe's home in order to execute a search warrant that Detective Clingerman had obtained from the Superior Court of the District of Columbia several days earlier.[1] (*See* Complaint, Dkt. No. 1, Ex. 1 at ¶¶ 10-11.). The warrant was issued pursuant a sworn affidavit prepared by Detective Clingerman in the course of his investigation of the June 27, 2010 murder of Victor Mba-Jones. (Dkt. No. 2, Ex. 1 at pp. 1-9.). In the affidavit, Detective Clingerman stated that there were two murder suspects in the Mba-Jones homicide. *Id*. One suspect was Nathaniel Headspeth. (*Id*. at ¶ 11.). As part of the investigation, Detective Clingerman sought the warrant to locate evidence to connect Headspeth to the Mba-Jones murder, *e.g*. "red tennis shoes, white shirt, firearm(s), ammunition, gun holster," *etc*. (*Id*. at ¶¶ 6, 8.). In identifying an address for Headspeth, Detective Clingerman relied on the statement of Headspeth's relative. (*Id*. at ¶ 19.). Detective Clingerman asserted that on July 20, 2010, Headspeth's relative told the detective that the suspect resided at his sister's apartment located at 97 Galveston Street, SW #302, Washington, D.C. *Id*. As it turns out, this is plaintiffs' address. (Dkt. No. 1, Ex. 1 at ¶ 10.). Detective Clingerman claims that he later learned that Headspeth was staying in apartment #304. (Dkt. No. 2 at 6 n. 2.). Based on Detective Clingerman's affidavit, D.C. Superior Court Judge Hamilton issued a search warrant on August 2, 2010. (Dkt. No. 2, Ex. 1.).

Plaintiffs describe the events of the morning of August 10, 2010 as follows:

> [D]efendant officers invaded the plaintiff's [sic] home and terrorized them for an extended period. Even though plaintiff Amos Sharpe was over

---

[1] The court may take judicial notice of the search warrant and affidavit without converting the present motion into a motion for summary judgment. *See Vance v. C*hao, 496 F. Supp. 2d 182, 184 n.1 (D.D.C. 2007) (noting that a court may take judicial notice of public documents, such as court records, without converting a motion to dismiss into a motion for summary judgment).

ORDER-2

> seventy (70) years old at the time, the defendant officers manhandled [him], pointed guns in his face and handcuffed him as they forced him [to] stay seated in his own home. Similarly, Monica Sharpe, who is a pharmacist, and who repeatedly told the officers that she had to go to work, was also manhandled, had guns pointed in her face, [and was] handcuffed and forced to stay seated in her own home. After terrorizing the plaintiff's [sic] for over an hour, the bungling officer defendants finally realized that they had the wrong home, at which point they released the plaintiff's [sic] from custody, and left the plaintiffs and their home in shambles.

(Dkt. No. 1, Ex. 1 at ¶ 12.). Plaintiffs claim that Detective Clingerman either knew or should have known that he was relying on false information when he submitted the affidavit in support of the search warrant. Plaintiffs assert that "[Detective] Clingerman had no legitimate facts of any kind that would support a search of the plaintiff's [sic] home. He had never been in the plaintiff's [sic] home; he had no previous contact with either of the plaintiff's [sic]; and he had no information associating the plaintiff's [sic] with any kind of criminal conduct whatsoever." (*Id*. at ¶ 11.).

Plaintiffs filed a lawsuit in D.C. Superior Court on August 4, 2011 against the District of Columbia, Detective Clingerman and "several unknown police officers". (*Id*. at ¶¶ 5-7.). Plaintiffs allege claims for Assault and Battery (Count I), False Arrest—Imprisonment (Count II), violation of their due process rights under the Fourth Amendment (Count III), and negligent training and supervision against the District (Count IV). They seek $1,500,000 in compensatory damages, in addition to unspecified sums as punitive damages, attorney fees and costs. (*Id*. at ¶¶ 17, 20, 23, and 27.).

Defendants removed the case to this court on October 13, 2011 (Dkt. No. 1) and Detective Clingerman filed the present motion to dismiss. (Dkt. No. 2.). Plaintiffs filed their opposition to the motion on November 22, 2011 (Dkt. No. 7) and Detective Clingerman filed his

ORDER-3

reply on December 6, 2011. (Dkt. No. 8.). The case was reassigned to this court on April 3, 2012. (Dkt. No. 9.).

## III. DISCUSSION

### A. Standard of Review

The purpose of a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *In re Interbank Fund Corp. Sec. Litig.*, 668 F. Supp. 44, 47-48 (D.D.C. 2009) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Ambiguities must be resolved in favor of the plaintiffs, giving them the benefit of every reasonable inference drawn from the well-pleaded facts and allegations in the complaint. *See id.*

To survive a Rule 12(b)(6) motion, the complaint must plead sufficient facts, taken as true, to provide "plausible grounds" that discovery will reveal evidence to support the plaintiff's allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Twombly*, 550 U.S. at 570)). Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678. (citation omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id*. (citation omitted). For example, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe

ORDER-4

that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). However, the court's function is not to weigh potential evidence that the parties might present at a later stage, but to assess whether the pleading alone is legally sufficient to state a claim for which relief may be granted. *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1086 (D.C. Cir. 1998). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Iqbal*, 556 U.S. at 678. (citation omitted).

### B.   Analysis

Plaintiffs contend that Detective Clingerman violated their right against unreasonable search and seizure guaranteed by the Fourth Amendment to the U.S. Constitution and seek compensation under 42 U.S.C. § 1983. Detective Clingerman argues that this claim must be dismissed because: (1) the facts alleged in the complaint do not rise to the level of a constitutional violation, and (2) he is entitled to qualified immunity. In addition, he argues that the court should not assert supplemental jurisdiction over plaintiffs' remaining state claims.

### 1.   The Fourth Amendment Claim

Plaintiffs claim that Detective Clingerman and the other defendant officers acted with deliberate indifference to and in reckless disregard of plaintiffs' due process rights under the Fourth Amendment. (Dkt. No. 1, Ex. 1 at ¶ 22.). Specifically, plaintiffs allege that they were subjected to "an unlawful seizure when they were accosted at gunpoint, manhandled and handcuffed like common criminals." (*Id*. at ¶ 23.). Plaintiffs concede that the defendant officers acted pursuant to a search warrant, but argue that the search was unlawful because it was not based on "legitimate facts of any kind that would support a search of plaintiff's [sic] home." (*Id*.

ORDER-5

at ¶ 11.). In support of this argument, plaintiffs claim that Detective Clingerman had never been in the plaintiffs' home, had not had any previous contact with plaintiffs, and did not have information associating plaintiffs with criminal activity. *Id*. Therefore, plaintiffs conclude, Detective Clingerman knew or should have known that the information in the affidavit he prepared and the warrant that Judge Hamilton signed were false. *Id*.

Detective Clingerman urges the court to dismiss this claim. He asserts that plaintiffs' conclusory allegation that he had "no legitimate facts" to justify a search of plaintiffs' residence is an inadequate response to overcome his Rule 12(b)(6) motion given the pleading requirements establish by *Twombly* and *Iqbal*. (Dkt. No. 2 at 5.). He argues that the only facts that plaintiffs offer in support of this allegation—that Detective Clingerman had never been to their house, did not know them, and did not have information associating them with criminal activity—are irrelevant to whether the search was justified, because the detective did not obtain a warrant to search *plaintiffs*' residence. Rather, the warrant was obtained to conduct a search of an apartment in which he believed the suspect was residing. Because the warrant and affidavit clearly indicate that there was probable cause to believe that the suspect resided in apartment #302, Detective Clingerman argues, the search did not violate plaintiffs' constitutional rights.

Detective Clingerman also argues that plaintiffs' conclusory allegation that he knew or should have known that the information contained in the affidavit was false, also fails to satisfy the pleadings requirements under *Twombly* and *Iqbal*. He claims that the search warrant and affidavit show that he relied on statements from the suspect's relative who reported that the suspect resided in apartment #302. Importantly, he asserts that the complaint contains no facts that call his reliance on this information into question.

ORDER-6

Plaintiffs respond that it is their contention that Detective Clingerman "lied in his affidavit," that "no one told [the detective] that Mr. Headspeth lived" in apartment #302 and, if someone did tell the detective that Headspeth lived there, that person "was not a family member of Mr. Headspeth." (Dkt. No. 7 at 4.). In addition, plaintiffs assert that it would not have "taken much for the defendant officers to learn that neither of the plaintiffs were related to Mr. Headspeth, nor would it have taken much for these inept officers to learn that plaintiff Amos Sharpe had lived in that same apartment for decades." *Id*.

The court finds that plaintiffs have failed to allege factual allegations that, when accepted as true, are sufficient to state a claim for relief that is plausible on its face. *See Iqbal*, 556 U.S. at 678. Detective Clingerman's affidavit sets forth the factual basis for his belief that the suspect resided in the apartment and a superior court judge reviewed the affidavit and found probable cause to issue the warrant. Plaintiffs' blanket assertions that Detective Clingerman lied in order to obtain the warrant, are not only unsupported by any factual allegations in the complaint, but they make little sense. As plaintiffs concede, Detective Clingerman had no prior contact with them or any reason to believe that they had been involved in any criminal activity. Plaintiffs' allegation is nothing short of claiming that the detective lied in order to obtain the warrant so that he could search plaintiffs' apartment for sport—an allegation that this court finds implausible. *See, e.g., Fraternal Order of Police v. Gates*, 602 F. Supp. 2d 104, 109 (D.D.C. 2009) (noting that plaintiff failed to recite facts sufficient to raise a right to relief above the speculative level). That the officers may have pointed guns at plaintiffs and handcuffed them, while unfortunate, is not unexpected behavior in light of the fact that the officers believed a murder suspect was residing in the apartment. By making this finding, the court does not mean to discount the understandable fear and indignation that plaintiffs must have felt at having their home invaded

ORDER-7

by police officers. It is this court's sincere wish that plaintiffs had never experienced the events of that morning. Nevertheless, plaintiffs' allegations do not support a viable constitutional claim.

### 2. Qualified Immunity

Detective Clingerman pleads in the alternative that he is protected by qualified immunity for his actions in connection with the search of plaintiffs' apartment. (Dkt. No. 2 at 9.). He argues that a reasonable police officer, facing the same circumstances, would have believed that the conduct was lawful. Plaintiff counters that qualified immunity is not available to a police officer who knowingly falsifies a search warrant affidavit. (Dkt. No. 7 at 4.). Plaintiff asserts that it was unreasonable for Detective Clingerman to "accept the word of a presumed family member of a suspected murderer as to where he lived without any indicia of reliability at all; even though he had never receive reliable information from the alleged family member in the past; even though he did not undertake surveillance of the location, or check the rental office to see whose name was not the lease…." (*Id*. at 5.).

Public officials are protected from suit if their official acts were "objectively reasonable" under the legal rules that were "clearly established" at the time of the alleged illegal action. *See Anderson v. Creighton*, 483 U.S. 635, 639-640 (1987); *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). Qualified immunity is immunity from suit rather than a mere defense to liability. *Hunter v. Bryant*, 502 U.S. 22, 227 (1991). Therefore, the question of immunity should be resolved at the earliest possible stage of the litigation. *Id*.

The court finds that Detective Clingerman is entitled to qualified immunity. His reliance on the information provided by the suspect's relative was reasonable and, indeed, the type of information customarily relied on by law enforcement officers.[2] "Only where the warrant

---

[2] Indeed, other than being off by one apartment number, the information was accurate.

ORDER-8

application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable…will the shield of [qualified] immunity be lost." *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986) (internal citation omitted). Such is not the case here. Detective Clingerman's actions in obtaining a warrant and his sworn statement that he was informed that apartment #302 was the correct address for Headspeth establish that he acted in good faith. The detective concedes that the informant's information ultimately ended up being partially incorrect, but such a mistake does not negate his entitlement to immunity. As the United State Supreme Court has noted, "it is inevitable that law enforcement officials will, in some cases, reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable." *Anderson*, 483 U.S. at 641 (citing *Malley*, 475 U.S. at 344-345).

### 3.  Supplemental Jurisdiction

It is a fundamental principle of comity that federal courts should avoid "needless decisions of state law." *Gaubert v. Gray*, 747 F. Supp. 2d 40, 50 (D.D.C. 1990) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)). "Pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *Gaubert*, 747 F. Supp. 2d at 50 (dismissing plaintiff's four common law claims after dismissing plaintiff's constitutional claims on the ground of qualified immunity); *see also Shekoyan v. Sibley Int'l,* 409 F.3d 414, 423 (D.C.Cir.2005) (citing *Gibbs,* 383 U.S. at 726) (the decision to exercise supplemental jurisdiction is discretionary). Furthermore, pursuant to 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a claim [that forms part of the same case or controversy] if ... the district court has dismissed all claims over which it has original

ORDER-9

jurisdiction." 28 U.S.C. § 1367(c)(3). In this case, plaintiffs have failed to plead a viable constitutional claim. All remaining claims are based on state law. Detective Clingerman urges this court to decline to exercise supplemental jurisdiction and plaintiffs make no argument in favor of retaining jurisdiction except to argue that the detective's request "is just plain batty" given that he removed the matter to this court in the first place. (Dkt. No. 7 at 5.). Given that this case is at the earliest stages of litigation, the court finds that comity, convenience and judicial economy weigh against supplemental jurisdiction. Accordingly, the court will dismiss without prejudice the remainder of plaintiffs' claims.

**IV. CONCLUSION**

For the foregoing reasons, the court GRANTS Detective Clingerman's Motion to Dismiss Plaintiffs' Complaint. Count III is dismissed with prejudice. The remaining claims are dismissed without prejudice. This matter is hereby closed.

DATED this 18th day of May, 2012.

_Barbara J. Rothstein_
Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER-10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

ORDER-11